**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DROPLETS, INC.** | |
| **Plaintiff,** | **Civil Action No. 1:12-cv-02326-CM** <br> **ECF CASE** |
| **vs.** | |
| **E*TRADE FINANCIAL CORPORATION ET AL** | **JURY TRIAL** |
| **Defendant(s).** | |

## PLAINTIFF DROPLETS, INC.'S RESPONSIVE CLAIM CONSTRUCTION STATEMENT

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. DEFENDANTS' SIGNIFICANT DISCLAIMER BURDEN HAS
NOT BEEN MET ..................................................................................................1

III. DEFENDANTS' EXTRINSIC EVIDENCE IS MISGUIDED &
UNPERSUASIVE ..................................................................................................1

IV. ARGUMENT:  DROPLETS' CONSTRUCTIONS SHOULD BE
ADOPTED ..............................................................................................................2

    A. "Application" ..............................................................................................2

    B. "Operating Environment Information" .................................................5

        1. Each Of The OEI Terms Has The Same Meaning.......................5

        2. Defendants' Proposed OEI Construction Ignores
The Intrinsic Record ......................................................................6

    C. "Presentation Information" ......................................................................7

    D. "Interactive Link" / "Link" ......................................................................7

        1. Defendants Fail To Provide Support For Their
Argument That "Interactive Link" And "Link" Are
"Software" That Is "Stored On A Client Computer"..................7

        2. Defendants Fail To Account For The Differing Use
Of "Interactive Link" And "Link" In The Claims Of
The Patents-In-Suit ........................................................................8

        3. "Interactive Links" Relate To The Operating State
Of An "Application" ......................................................................9

        4. The Plain Text Bookmarks, Shortcuts, And Internet
Addresses Of The Prior Art Are Not "Interactive
Links" Under Droplets' Proposed Construction
Because They Do Not "Relate To The Operating
State Of An Application." ............................................................10

    E. "Presentation Client" ..............................................................................12

        1. Defendants' Proposed Requirement That A
"Presentation Client" Is "Installed" On The Client
Is Rebutted By The Specification ...............................................12

McKool 886604v4

2.  Droplets' Construction Allows For Cooperation Between A "Presentation Client" And A Web Browser ................................................................................... 14

F.  "Presenting . . . The Application:" Defendants' Construction Ignores The Specification's Teaching That An "Application" May Execute Remotely ................................................................... 14

G.  "Re-Establishing:" The Term Is Clear, Requires No Construction And Defendants' Proposal Injects Ambiguity Into The Claims .............................................................................. 14

V.  CONCLUSION ...................................................................................................... 15

McKool 886604v4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Bancorp Servs. LLC v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004)..................................................................................9

*Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
  677 F.3d 1361 (Fed. Cir. 2012)..................................................................................8

*E-Pass Techs., Inc. v. 3 Com Corp.*,
  343 F.3d 1364 (Fed. Cir. 2003)................................................................................13

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009)..................................................................................9

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*,
  508 F.3d 1366 (Fed. Cir. 2007)..................................................................................1

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005)................................................................................11

*Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) (Rader, J., concurring) ..........................................12

*Grober v. Mako Prods.*,
  686 F.3d 1335 (Fed. Cir. 2012)..................................................................................1

*Intell-A-Check Corp. v. AutoScribe Corp.*,
  346 F. Supp. 2d 698 (D.N.J. 2004) ..........................................................................12

*Levy v. Kosher Overseers Ass'n of Am.*,
  104 F.3d 38 (2d Cir. 1997)........................................................................................11

*Nystrom v. TREX Co.*,
  424 F.3d 1136 (Fed. Cir. 2005)..................................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)...............................................6, 8, 13, 14

*SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001)..................................................................................4

*Sri Int'l v. Matsushita Elec. Corp.*,
  775 F.2d 1107 (Fed. Cir. 1985)..................................................................................2

*Superguide Corp. v. DirecTV Enters.*,
  358 F.3d 870 (Fed. Cir. 2004)....................................................................................1

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)..................................................................................4, 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)....................................................................................2

*Vitrionics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)......................................................................................1

## STATUTES

35 U.S.C. § 101.................................................................................................................8

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | United States Patent No. 6,687,745, including Re-Examination Certificate |
| B | United States Patent No. 7,502,838 |
| C | Excerpts of Google - Company - Our History in Depth, retrieved from http://www.google.com/about/company/history/ April 29, 2013 |
| D | Key Facts - Facebook Newsroom, retrieved from http://newsroom.fb.com/Key-Facts on May 3, 2013 |
| E | Wired.com - Sept. 28, 1998: Internet Explorer Leaves Netscape in Its Wake, retrieved from http://www.wired.com/thisdayintech/2009/09/0928ie-beats-netscape/ on May 3, 2013 |
| F | International Telecommunications Union - Top 20 Online Service Providers, 1999, retrieved from http://www.itu.int/ITU-D/ict/statistics/at_glance/Top20ISP.html on May 3, 2013 |
| G | Excerpts of Federal Communications Commission Releases Data on High-Speed Services for Internet Access, 1999, retrieved from http://transition.fcc.gov/Bureaus/Common_Carrier/Reports/FCC-State_Link/IAD/hspd1000.pdf on May 6, 2013 |
| H | Excerpts of Federal Communications Commission Releases Data on High-Speed Services for Internet Access, 2004, retrieved from http://transition.fcc.gov/Bureaus/Common_Carrier/Reports/FCC-State_Link/IAD/hspd0705.pdf on May 6, 2013 |
| I | Excerpts of Federal Communications Commission Releases Data on High-Speed Services for Internet Access, 2008, retrieved from http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-296239A1.pdf on May 6, 2013 |
| J | Excerpts of Federal Communications Commission Releases Data on High-Speed Services for Internet Access, 2011, retrieved from http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-314630A1.pdf on May 6, 2013 |
| K | ETRADE.com Home Page, February 24, 1999, retrieved from http://web.archive.org/web/19990224013923/http://www.etrade.com/cgi-bin/gx.cgi/AppLogic+Home on May 7, 2013 |

McKool 886604v4

| L | Scottrade.com Home Page, November 29, 1999, retrieved from http://web.archive.org/web/19991129023113/http://www.scottrade.com/? on May 7, 2013 |
|---|---|
| M | Ameritrade.com Home Page, November 29, 1999, retrieved from http://web.archive.org/web/19991129004310/http://www.ameritrade.com /? on May 7, 2013 |
| N | Schwab.com Home Page, November 15, 1999, retrieved from http://web.archive.org/web/19991115223357/http://schwab.com/ on May 7, 2013 |
| O | Execerpts of Archive.org - The Wayback Machine - Frequently Asked Questions, retrieved from http://archive.org/about/faqs.php#The_Wayback_Machine on May 3, 2013 |
| P | ETRADE.com Home Page, April 29, 2013, retrieved from http://www.schwab.com on April 29, 2013 |
| Q | Scottrade.com Home Page, April 29, 2013, retrieved from http://www.schwab.com on April 29, 2013 |
| R | TDAmeritrade.com Home Page, April 29, 2013, retrieved from http://www.schwab.com on April 29, 2013 |
| S | Schwab.com Home Page, April 29, 2013, retrieved from http://www.schwab.com on April 29, 2013 |
| T | Declaration of David Berberian Jr., Executed May 10, 2013 |
| U | Complaint (without exhibits), Filed July 31, 2006, Droplets, Inc. v. Adobe Systems Incorporation, No. 2:06-cv-307, Eastern District of Texas |
| V | Excerpts of Docket Listing , Droplets, Inc. v. Adobe Systems Incorporation, No. 2:06-cv-307, Eastern District of Texas, retrieved on May 8, 2013 |
| W | Excerpts of Docket Listing, Droplets, Inc. v. eBay, Inc., No. 2:11-cv-401, Eastern District of Texas, retrieved on May 10, 2013 |
| X | Excerpts of Docket Listing, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California, retrieved on May 10, 2013 |
| Y | Excerpts of Docket Listing, Droplets, Inc. v. Williams-Sonoma, Inc., No. 5:12-cv-4047, Northern District of California, retrieved on May 10, 2013 |

| Z  | Excerpts of Docket Listing, Droplets, Inc. v. Nordstrom, Inc., No. 5:12-cv-4049, Northern District of California, retrieved on May 10, 2013 |
|----|------------------------------------------------------------------------------------------------------------------------------------------|
| AA | Order Dismissing Google, Dkt. 234, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California |
| BB | Order Dismissing YouTube, Dkt. 233, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California |
| CC | Order Dismissing Facebook, Dkt. 236, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California |
| DD | Order Dismissing Amazon, Dkt. 228, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California |
| EE | Order Dismissing Apple, Dkt. 229, Droplets, Inc. v. Amazon.com, Inc., No. 5:12-cv-3733, Northern District of California |
| FF | Order Dismissing eBay, Dkt. 156, Droplets, Inc. v. eBay, Inc., No. 2:11-cv-401, Eastern District of Texas |
| GG | Order Dismissing Target, Dkt. 43, Droplets, Inc. v. Target Corp., No. 2:12-cv-391, Eastern District of Texas |
| HH | Order Dismissing Merrill Lynch entities, Dkt. 198, Droplets, Inc. v. E*Trade Fin. Corp., No. 1:12-cv-2326, Southern District of New York |
| II | Order Dismissing OptionsHouse entities, Dkt. 202, Droplets, Inc. v. E*Trade Fin. Corp., No. 1:12-cv-2326, Southern District of New York |
| JJ | Order Dismissing Zecco entities, Dkt. 201, Droplets, Inc. v. E*Trade Fin. Corp., No. 1:12-cv-2326, Southern District of New York |
| KK | July 2, 2009 Office Action Response During Re-Examination of '745 Patent |
| LL | Exhibit A to Joint Claim Construction and Prehearing Statement, Dkt. 134, Droplets, Inc. v. eBay, Inc., No. 2:11-cv-401, Eastern District of Texas |
| MM | January 15, 2013 Office Action Response During Re-Examination of '838 Patent |
| NN | MGM Technology Partners techblog - Must-Know URL Hash Techniques for AJAX Applications, retrieved from http://blog.mgm-tp.com/2011/10/must-know-url-hashtechniques-for-ajax-applications/ on May 10, 2013. |

McKool 886604v4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "'745 Patent" | Refers to U.S. Patent No. 6,687,745 |
| "'838 Patent" | Refers to U.S. Patent No. 7,502,838 |
| "*Adobe* Case" | Refers to Droplets' litigation with Adobe Systems Incorporated and Polaris.  The docket listing for the *Adobe* Case can be found at Ex. V. |
| "Charles Schwab" | Refers to all Charles Schwab defendants in this litigation |
| "Defendants" | Collectively refers to all defendants currently in this litigation, including: Charles Schwab, E*TRADE, Scottrade, and TD Ameritrade |
| "Def. Ex." | Refers to the corresponding Exhibit of the Declaration of Brian Range submitted with Defendants' Opening Brief (Dkt. 209) |
| "D.Br." | Refers to Defendants' Opening Claim Construction Statement, Dkt. 207 |
| "Droplets" | Refers to Droplets, Inc. |
| "O.Br." | Refers to Droplets' Opening Claim Construction Statement, Dkt. 206 |
| "Ex." | Refers to the corresponding Exhibit of the Declaration of Josh Budwin submitted with Droplets' Opening Brief (Dkt. 208). |
| "E*TRADE" | Refers to all E*TRADE defendants in this litigation |
| "Patents-in-Suit"/"Patents" | Refers to U.S. Patent Nos. 6,687,745 and 7,502,838 |
| "Scottrade" | Refers to all Scottrade defendants in this litigation |
| "TD Ameritrade" | Refers to all TD Ameritrade defendants in this litigation |

McKool 886604v4

## I.      INTRODUCTION

As Droplets' Opening Brief demonstrated, Droplets' proposed constructions come from, and comport with, the intrinsic record.  However, Defendants' proposed constructions seek to import limitations and claim disclaimers where none exist.  In support of their misguided constructions, Defendants ignore the clear teachings of the Patents.  Instead, Defendants significantly premise their constructions on mischaracterized, unhelpful extrinsic evidence.

## II.      DEFENDANTS' SIGNIFICANT DISCLAIMER BURDEN HAS NOT BEEN MET

Several of Defendants' constructions include additional statements, beyond Defendants' constructions, about alleged "disclaimers."  *See* D.Br. at 7 ("interactive link"), 12 ("link"), 14 ("application"), 18 ("presenting the application").  The burden to find a disclaimer is significant.  "[T]he prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage." *Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004).  "[W]hile the prosecution history can inform whether the inventor limited the claim scope in the course of prosecution, it often produces ambiguities created by ongoing negotiations between the inventor and the PTO." *Grober v. Mako Prods.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012).  The prosecution history as a whole should be considered, not statements in isolation. *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1372 (Fed. Cir. 2007).  Given the intrinsic record's contradiction of Defendants' out-of-context statements, Defendants have failed to meet their burden.  Sections IV.A, IV.D, IV.F, *infra*.

## III.      DEFENDANTS' EXTRINSIC EVIDENCE IS MISGUIDED & UNPERSUASIVE

Defendants rely on misguided, unpersuasive extrinsic evidence.  *See Vitrionics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (defining intrinsic evidence as claims, specification, and prosecution history).  For instance, attached to Defendants' Brief is Droplets' claim construction briefing from the *Adobe* Case.  *See* Def. Exs. E–G.  Such evidence is clearly

1

extrinsic, yet it is cited to and relied upon by Defendants in support of their constructions.  *See* D.Br. at 3 ("interactive link" and "application"), 7 ("interactive link"), 9 (same), 15 ("application"), 18 ("presenting the application").  Nonetheless, Droplets' positions in the *Adobe* Case are consistent with Droplets' position now.  *See* Sections I.A.3 & I.A.4, *infra*.

Furthermore, Defendants rely on Droplets' infringement allegations to support their constructions.  Def. Exs. L, N; D.Br. at 4–5 ("Droplets' Allegations Against Defendants"), 11 ("interactive link"), 14 ("application"), 15 (same).  "[C]laims are not construed 'to cover' or 'not to cover' the accused device."  *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (cited by *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009)).  Defendants mischaracterize Droplets' infringement allegations and the prior art in an attempt to suggest that Droplets' infringement allegations and claim constructions are so broad as to cover certain prior art.  *See* D.Br. at 9 ("Droplets cannot properly assert that Defendants infringe . . . ."), 8, 11, 15.  However, claim construction is not the time to consider infringement and validity issues.  *Sri*, 775 F.2d at 1118 ("It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement.").  Nonetheless, and as explained herein, Droplets' claim construction proposals account for the intrinsic record and are not so broad as to cover the distinguished prior art.  *See, e.g.*, Sections I.A.3, I.A.4, *infra*.[1]

## IV.    ARGUMENT: DROPLETS' CONSTRUCTIONS SHOULD BE ADOPTED

### A.    "Application"

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| application | software that performs work for a user | A computer program that executes |

---

[1] Defendants also rely on dictionary definitions from the Court's order on Defendants' summary judgment.  *See* D.Br. at 15, n.8.  However, the patentees acted as their own lexicographers with respect to "application," and such extrinsic evidence is unnecessary. *See* Section I.A.1, *infra*.

| | | specific tasks and produces outputs. Because of Droplets' disclaimer, the application must execute on a remote server. |
|---|---|---|

### 1. Droplets' Proposed Construction Comes From The Intrinsic Record

Droplets' proposed construction of "application" comes directly from the intrinsic record. During re-examination of the '745 Patent, Droplets stated that "[a]pplications are software programs designed to perform specific tasks for a user" and that "applications relate to software programs that execute tasks and produce outputs." Ex. KK at 51–53.

In support of their construction, Defendants do not cite intrinsic evidence whereby Droplets expressly limited the claimed "application" to "executing specific tasks and producing outputs." As Droplets' construction recognizes, the "work" that an "application" "performs . . . for a user" may include more than executing tasks and producing outputs; such "work" can also include receiving and processing inputs, interacting with operating systems, and handling communications between device and server. *E.g.*, Ex. A 2:12–16, 4:62–64, 9:8–17, 10:5–11, 11:30–39, 11:50–59, 12:3–48, 22:4–14, 24:7–21. Further, Droplets did not define "application" as a "computer program," but instead defined the claimed "application" as "software"—just as Droplets' construction recognizes. O.Br. at 9–11; Ex. KK at 51–53.

### 2. Defendants' Specification-Based "Disclaimer" Wrongly Equates The Location Of Storing An "Application" With The Location Of Its Execution

Defendants' specification-based disclaimer argument is premised on the fact that "applications" *may be stored* remotely—a fact with which Droplets does not take issue. D.Br. at 16–17. But, as the specification notes, where an "application" is *stored* is not determinative as to where the "application" *executes*. The specification provides support for "applications" stored on a remote server being downloaded to, and executed on, a user's local device. *See, e.g.*, Ex. A 11:41–51 (noting that an "application," in some cases, may be sent to a user's device), 11:51–59

3

(same), 24:35–37 (noting that a shopping application may be downloaded to a user's device).

Further, the specification provides support for certain functionality of an "application," even if stored remotely, to be executed locally—including at least instructions for rendering graphical objects in applications, parameters or data values within applications, and application-specific business logic to process application input. *See, e.g.*, Ex. A 9:8–17, 11:30–39, 11:50–59; *see also* O.Br. at 10–11. As such, and regardless of where an "application" is *stored*, the specification does not limit where the "application" *executes*.

Defendants' cases stand for the proposition that discussing the "present invention" in the specification is "strong evidence that the claims should not be read to encompass the opposite structure." *See SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (citing *SciMed*). Droplets' proposed construction does not argue for the "opposite structure"—*i.e.*, Droplets is not arguing an "application" is always stored locally.

### 3. Defendants' Prosecution-Based And Adobe Case-Based "Disclaimer" Fails To Acknowledge That Portions Of The "Application" May Execute Locally

Defendants' further arguments in support of limiting the "application" term to only encompass "execution on a remote server" fail for at least two reasons. First, the block quote on page 15 of Defendants' Opening Brief misleads and lacks context. *See* Def. Ex. G at 4. In the quote, Droplets was paraphrasing what it understood Adobe's position to be—not stating Droplets' own position. And, in fact, the sentences immediately following Defendants' quote demonstrate that Droplets' position today is the same as during the *Adobe* Case:

> Adobe, however, fails to appreciate how the '745 Patent achieves this goal, *erroneously leading it conclude that no processing takes place on the client* and that presenting applications is therefore directed only to the display of functionality. The '745 Patent nevertheless "facilitate[s] an interactive communication environment between the client computer and the application server," which *provides the experience of a local application by actually providing*,

4

as opposed to just displaying, *functionality* of the remotely stored applications. Def. Ex. G at 4 (emphasis added). Droplets argued in the *Adobe* Case, as it argues now, that *some* "processing" of the "application" may take place on the client.

Second, Droplets' arguments in the prosecution history were taken out of context.

• Droplets distinguished Marimba and Van Hoff because they used *entirely local applications* (referred to as "channels"). Ex. KK at 43 (noting that in Marimba, "they locally execute applications at a client"/"the application is locally executed," and that in Marimba/Van Hoff, "[t]he Channels are downloaded to, executed and maintained in a Tuner client application"). In other words, in Marimba and Van Hoff the "applications" executed entirely on the local device, with no portion of the application executing on the remote server.

• Droplets distinguished the Gish and ICE-T references by pointing out that neither prior art system provided the benefits that the Patents described (*i.e.*, avoiding the need to locally store every "application" while giving the feeling of local execution). Ex. KK at 25–26. In fact, Droplets' expressly pointed out that in contrast to these references, the "local experience" of a remote application was achieved by the invention through remote *storage* of an "application," and did not foreclose a combination of remote and local execution of that "application." *Id.*

• Droplets distinguished the LeMole reference because the advertisements in LeMole were merely *information* and not "applications" allowing "users [] to perform specific tasks." Ex. KK at 51–53. As was the case with the Marimba and Van Hoff references, the information was presented through entirely local applications, with no remote execution. *Id.* at 53.

Thus, in distinguishing prior art, Droplets did not disclaim a portion of an "application" executing locally—it disclaimed the whole "application" executing locally. *See* O.Br. at 9–12.

Defendants' disclaimer burden is high, and it has not been met. *See* Section II, *supra*.

### B. "Operating Environment Information"

| **Claim Term(s)** | **Droplets' Proposal** | **Defendants' Proposal** |
|---|---|---|
| operating environment information / information relating to operating environment / operating environment / operating system environment | information relating to the client computer's operating system, user interface, accessibility, or hardware capabilities | Information identifying client computer hardware. |
| operating system environment information | | Plain meaning, or, alternatively, information relating to the client computer's operating system. |

#### 1. Each Of The OEI Terms Has The Same Meaning

Defendants argue that while three of the OEI terms have one meaning, the fourth

("operating system environment information," found only in Claim 29 of the '838 Patent) should

not be construed, or should be construed to refer to a device's operating system.  *See* D.Br. at 23.

However, the patentees treated "operating system environment information" as analogous to the

other OEI terms, including during re-examination.  *See, e.g.*, Ex. MM at 6–8 (discussing

"operating environment information" with respect to Shaw, treating independent Claims 1, 15,

29, and 33 the same with respect to the term, despite Claim 29 using the slight variation here)

17–18 (similar for Frese), 24–26 (similar for Tarentella).

### 2. *Defendants' Proposed OEI Construction Ignores The Intrinsic Record*

Defendants cherry-pick their preferred OEI type (hardware) and ignore the intrinsic

record regarding other OEI types.  Defendants cite just three parts of the specification, and none

of the claims.  *See* D.Br. at 22–23.  The first two citations (Ex. A 8:56–9:12, 9:18–36) simply

acknowledge that users of the invention may use different types of devices with differing

hardware capabilities.  While different devices may have different hardware capabilities, nothing

in the portion of the specification cited requires hardware as an OEI type, particularly to the

exclusion of other OEI types.  The third citation (Ex. A 13:28–32) simply provides one possible

combination of OEI (operating system and hardware) and does not preclude other combinations.

Furthermore, Defendants ignore the claims.  *See Phillips v. AWH Corp.*, 415 F.3d 1303,

1314 (Fed. Cir. 2005) (en banc) (noting the claims' importance).  For example, claims 27 and 76

of the '745 Patent both provide that "the second information relating to the operating

environment of the client computer further includes information regarding an operating system

and hardware capabilities of the client computer."  Ex. A at 29 1:20–24 (Claim 27), 30 4:32–36

(Claim 76)).  Given that these dependent claims allow for OEI to *further* include the operating

system in addition to the hardware, the claims themselves leave open the possibility that OEI

include one, both, or neither of these two types of OEI.

6

The patentees acted as their own lexicographer with respect to OEI and did not limit OEI to any one of the four described types of OEI.  *See* O.Br. at 12–14.

### C.  "Presentation Information"

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| presentation information / presentational information / presentation instructions | information for presenting particular functionality to clients having different user interface requirements | Plain meaning. |

Defendants' plain meaning proposal for this term fails to account for the specific meaning provided by the patentees.  *See* O.Br. at 14.  As discussed in Droplets' Brief, the specification repeatedly refers to "presentation information" as information for presenting functionality to clients with differing interface requirements.  *See id.*

### D.  "Interactive Link"[2] / "Link"

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| interactive link | a link and information relating to an operating state of an application | Software stored on a client computer that restores a previous operating state of a remote application. |
| link | an active field that allows user selection and performance of an action upon user selection | Because of Droplets' disclaimer, an interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL). |

Droplets does not seek to construe "interactive link" or "link" more broadly than permitted by the intrinsic record.  D.Br. at 8.  Instead, Droplets' proposed constructions comport with the intrinsic record, and provide different meanings to different terms in different patents.

*1.*  Defendants Fail To Provide Support For Their Argument That "Interactive Link" And "Link" Are "Software" That Is "Stored On A Client Computer"

With no intrinsic support, Defendants' assert that "interactive links" and "links" are limited to (1) "software" (2) "stored on the client computer."  However, no intrinsic evidence

---

[2] Defendants assert that "[t]he 'interactive link' lies at the heart of Droplets' alleged inventions." D.Br. at 8.  However, "interactive link" is not present in any '838 Patent claim, and "link" is not present in any '838 Patent independent claim.  *See* Ex. B 29:48–34:7.

limits either term to "software."  *See* D.Br. at 11.  And "interactive links" and "links" may be stored in various places.  *See* O.Br. at 17–18 (discussing numerous claims, including Claims 12 and 16 of the '745 Patent, which allow for transmitting an "interactive link" to another device and storing an "interactive link" on a server).  Instead, Defendants focus on a statement during prosecution that "interactive links" may be stored *somewhere*.  D.Br. at 11; Ex. KK at 38.

      2.   *Defendants Fail To Account For The Differing Use Of "Interactive Link" And "Link" In The Claims Of The Patents-In-Suit*

Defendants assert that "interactive link" and "link" are the same.  *Id.* at 12.  However, this ignores the claims and prosecution history and focuses solely on the specification.  *Id.* at 12–14.  While the specifications of the Patents-in-Suit are nearly identical (*e.g.*, the '838 Patent includes a reference to the '745 Patent, Ex. B 1:5–7), the '838 Patent was filed after the '745 Patent.  And the later-filed '838 Patent's claims cease reference to "interactive link" and, instead, use a different term, "link."  *See Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) ("The general presumption that different terms have different meanings remains."); *see also Phillips*, 415 F.3d at 1314.  Even the patentees' response during re-examination of the '838 Patent fails to mention "interactive link."  *See* Ex. MM.

In support of their attempt to convolve the "link" and "interactive link" terms, Defendants suggest that because "links" were in the prior art, Droplets' '838 Patent, which uses the term "link," cannot have claims which incorporate elements of the prior art.  D.Br. at 13. Defendants provide no support for their assertion.  In fact, patents frequently are directed to "improvements" on the prior art, and in describing those "improvements," often refer to elements of the prior art in their claims. *See e.g.* 35 U.S.C. § 101 ("Whoever invents or discovers . . . any new and useful improvement thereof, may obtain a patent therefore . . . .").  Moreover, while Defendants refer to numerous examples in the specification of "the interactive link" being

mentioned with a follow-on use of "the link" in the same passage, this does not establish that all "links" are "interactive links."  D.Br. at 12–13.  As is true in normal English, after describing a definite article (*e.g.*, *the* happy children, *the* interactive link), later references in the same passage may refer to "the children" or "the link" and a reader understands that, in this follow-on passage, the children are the same "happy children," and the link is the same "interactive link."  This does not establish however that all "children" are happy or that all "links" are interactive.

Defendants' case law does not support their argument.  In *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329–30 (Fed. Cir. 2009), only intraluminal devices were described. In *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005), only wooden boards were described.  In *Bancorp Servs. LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372–73 (Fed. Cir. 2004), the term at issue was not used in the specification.  But here, the specification of the Patents describes "links" that are divorced from "the interactive links" also described.  *See, e.g.*, Ex. A 2:50–55 ("A link, such as a hyperlink, is created under the communication protocol. By selecting links and employing a web browser, a user may 'navigate' from one document to another, and from one web site to another, to access informational content and services . . . .").[3]

### 3.   *"Interactive Links" Relate To The Operating State Of An "Application"*

Defendants argue that "interactive links" are used to help restore the previous operating state of an "application."  *Id.* at 10–11.  Droplets agrees that "interactive links" relate to restoring the operating state of an "application," if such a previous operating state exists.  *See* Ex. A 24:55–60 (discussing restoring a previous operating state when there was a prior session, and leaving open possibility of no previous operating state where there was no previous session),

---

[3] The claims in *Nystrom* and *Bancorp* came from one patent—not two patents, each using different claim terms.  *Nystrom*, 424 F.3d at 1143 ; *Bancorp*, 359 F.3d at 1372–73.  Moreover, Defendants' cases were decided before *Chicago Board*.

25:17–19 (noting that a user may choose to start from a new operating state), 26:23–36 (similar).

Droplets' construction of "interactive link" expressly encompasses this limitation.

> ### 4. The Plain Text Bookmarks, Shortcuts, And Internet Addresses Of The Prior Art Are Not "Interactive Links" Under Droplets' Proposed Construction Because They Do Not "Relate To The Operating State Of An Application."

Droplets' proposed construction of "interactive link" does not seek to recapture allegedly disclaimed claim scope. First, Droplets does not dispute that the specification of the '745 Patent describes the plain text URL links, hyperlinks, bookmarks and cookies *that existed at the time the '745 Patent was filed* as prior art. *See* D.Br. at 8. As the portion of the '745 specification cited by Defendants makes clear, however, the claimed "interactive link" is different than the prior art URL links, hyperlinks, bookmarks and cookies because that prior art *did not* "include facilities for restoring previous operating states of the application. . ." *Id.*; Ex. A at 3:66-4:5. Droplets' proposed "interactive link" construction accounts for this distinction.

Second, Defendants point to prosecution arguments made for the '745 Patent (no such arguments were made during the prosecution of the '838 Patent) with respect to Gish, ICE-T, Dickman, and LeMole. D.Br. at 9. As a threshold, none of the '745 Patent-specific arguments mention or refer to "cookies" or "hyperlinks." *See id.* Therefore, there is no basis to manufacture any alleged disclaimer that includes "cookies" or "hyperlinks." Further, Defendants rely on out-of-context statements, as opposed to the whole of the prosecution history. D.Br. at 9. But as explained in Droplets' Opening Brief (at 20–21), Gish and Dickman related to simple plain text URLs, which while sometimes actionable, failed to encompass anything related to an operating state of an application. With respect to LeMole, it described simple bookmarks, simple URLs, and simple icons, which also failed to encompass anything related to an operating state of an application. *Id.* And ICE-T related to a standalone application and was distinguished on that basis. *Id.* Thus, Droplets' "interactive link" construction, which accounts for the

information "related to operating state," is consistent with its statements during prosecution.

Third, Droplets' proposed construction here is consistent with its proposed construction in the *Adobe* Case, which was never ruled on.  D.Br. at 9; *see also* O.Br. at 6 (noting that the parties settled before a claim construction order issued in the *Adobe* Case). Defendants contend that the prior proposal's mention of information "stored outside the browser" is materially different than Droplets' construction here.  D.Br. at 9 (bolding the phrase).  However, Droplets' current proposed construction is entirely consistent with its proposed construction in the *Adobe* Case.  That is, the "information" in Droplets' construction of "interactive link" relates to "an operating state of an application"—it is not part of the "browser" itself.  As Droplets' prior proposal is not inconsistent with Droplets' proposed construction here and was never adopted by any Court, there is no collateral estoppel.  *See Levy v. Kosher Overseers Ass'n of Am.*, 104 F.3d 38, 41 (2d Cir. 1997) (noting that, for collateral estoppel to apply, "the issue in the prior proceeding must have been actually litigated and actually decided").  Moreover, the claim constructions proposed by Droplets in the *Adobe* Case occurred *before* the '745 Patent's reexamination.  *Compare* Ex. V at 43 (brief filed 03/21/2008)*, with* Ex. KK (reexam response filed 07/02/2009).  Droplets' "interactive link" construction endeavors to account for later-arising events in the prosecution.

Finally, the claims are to be construed with the understanding of one of ordinary skill in the art "at the time of invention."  *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005).  While Defendants argue for a broad disclaimer applying to all "bookmarks, cookies, shortcuts, hyperlinks or Internet addresses (URLs)," their alleged disclaimer is not limited to the understanding that these terms had in September 1999, when the '745 Patent's provisional was filed.  Instead, Defendants' assert, with no authority whatsoever, that the scope

11

of the alleged disclaimer should be broad enough to cover not just the understanding of these terms in 1999, but also the understanding of these terms today. *See* D.Br. at 8 (arguing that the "interactive link" term should be construed to prevent any assertion of infringement against Defendants' 2013 products). *Cf. Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1348 (Fed. Cir. 2003) (Rader, J., concurring) (definitions of words "vary[] over time as the language evolves."); *Intell-A-Check Corp. v. AutoScribe Corp.*, 346 F. Supp. 2d 698, 703 (D.N.J. 2004) ("Since the ordinary meaning of words may change over time, the Court must limit its analysis to dictionaries and treatises that are informative of the ordinary meaning of the claim terms as of the time the patent issued."). To the extent that there was any disclaimer at all, and to account for the evolution of "the ordinary meaning of words . . . over time," any such disclaimer must be limited to the understanding that the allegedly disclaimed terms had in 1999, and not what one of skill in the art would understand those terms to mean today. *See* O.Br. at 1-3, 21 (discussing evolution of capabilities of the Web and Internet between 1999 and today).

### E.   "Presentation Client"

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| presentation client program code / presentation client | software, running on the client, that is capable of receiving user input and presenting remotely stored applications to users[4] | Software installed at the client computer that cooperates either with web browsers when in a web-based environment, or with stand-alone software programs when in other environments. |

The parties agree that a "presentation client" is software located "on the client."

> #### 1.  *Defendants' Proposed Requirement That A "Presentation Client" Is "Installed" On The Client Is Rebutted By The Specification*

Defendants argue that the "presentation client" must be installed on the user's device. D.Br. at 20–21. First, Defendants assert that use of the term "client" implies "installation," but no such implication logically flows from the specification. *Id.* at 20. The claims are devoid of

---

[4] *See* O.Br. at 21 (Droplets' will conform the construction in the E.D.Tex. with the one here).

any requirement that the "presentation client" *must be* "installed" on the user's device.  *See E-Pass Techs., Inc. v. 3 Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003) (noting that limitations in a specification should only be read into claims if the patentee was "his own lexicographer and imbued the claim terms with a particular meaning or disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction"); *Phillips*, 415 F.3d at 1314 ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms.").

Second, Defendants assert that "Figure 1 of the Patents-in-Suit depicts the presentation client *residing* on the client computer."  D.Br. at 20 (emphasis added).  Yet "residing" and "installation" are not synonyms, and Defendants cite nothing requiring as much.

Third, Defendants refer to two passages in the specification that refer to a "presentation client" being installed.  *Id.* at 20–21 (referring to '745 Patent (Ex. A) 8:5–13 and 9:46–50).  However, both of these citations are in reference to *one* embodiment of the claimed invention, where the invention operates independently from a web browser.  *Compare* Ex. A 8:5–13 (not mentioning web-based implementation) *and* Ex. A 9:46–50 (same) *with, e.g.*, Ex. A 10:59–64 (mentioning the web based implementation) *and* Ex. A 20:26–37 (same) *and* Ex. A 27:36–43 (same); *see also* Ex. A 11:31–39 (discussing both a standalone and web-based implementation).  In addition to discussing embodiments were the "presentation client" is installed on the user's device, the specification also discusses alternate embodiments where (1) the "presentation client" is downloaded and used in cooperation with a Web browser (*e.g.*, Ex. A 20:15–25); and (2) where the "presentation client" is already built into a Web browser (*e.g.*, Ex. A 20:26–37).  And, as explained in Droplets' Opening Brief, the specification discloses examples of "presentation clients" written in HTML, Java, and ActiveX, that are not "separately installed software

programs at the client computer."   O.Br. at 23.   Where multiple embodiments of a claimed

invention are disclosed, it is error to construe the claims to cover only one embodiment to the

exclusion of the alternate embodiments.   *Phillips*, 415 F.3d at 1323 (the Federal Circuit has

"repeatedly warned against confining the claims to [] embodiments").

>   2.   *Droplets' Construction Allows For Cooperation Between A "Presentation*
>   *Client" And A Web Browser*

Droplets' proposed construction, like Defendants' proposal, allows for cooperation

between a "presentation client" and a browser, but it is more closely aligned with the intrinsic

record as "receiving user input and presenting remotely stored applications to users."   *See* O.Br.

at 21–23; Ex. A 6:24–27, 27:11–17, 10:59–64.

### F.   "Presenting . . . The Application:" Defendants' Construction Ignores The Specification's Teaching That An "Application" May Execute Remotely

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| presenting . . . the application / presenting an application / display the application / presenting said invoked application / presenting . . . applications | displaying the application and enabling interaction with the user according to the user interface requirements | Displaying the application across a network and enabling interaction with the user according to the user interface requirements. Because of Droplets' disclaimer, the application must execute on a remote server. |

As Defendants correctly note, "[t]he parties agree that these 'presenting' terms require

displaying the application and enabling interaction with the user according to user interface

requirements."   D.Br. at 18.   However, Defendants cite no evidence supporting a disclaimer as to

where the "application" may execute.   *See* Section IV.A, *supra*; O.Br. at 9–12.

### G.   "Re-Establishing:" The Term Is Clear, Requires No Construction And Defendants' Proposal Injects Ambiguity Into The Claims

| Claim Term(s) | Droplets' Proposal | Defendants' Proposal |
|---|---|---|
| re-establishing | Plain meaning. | restoring the previous operating state of a remote application session |

As discussed in Droplets' Opening Brief (at 24–25), no construction of "re-establishing"

14

is necessary, based on ordinary usage of the term and its use in the claims.  Defendants are wrong that "[c]laim construction is necessary here because 'ordinary meaning' would not arrive at a meaningful understanding of the limitations of" the term." D.Br.at 18–19.

In order to urge the Court to construe this unambiguous term, the Defendants manufacture an issue.  *See id.* at 19 (discussing two alleged interpretations of "re-establishing"). As discussed in Droplets' Opening Brief (at 25), the claims themselves, and the terms used in those claims (including "interactive link," "third information," "application," and "fourth information") already address the "operating state" issue advanced by Defendants.  Both Droplets' and Defendants' proposed constructions of "interactive link" expressly account for information related to "operating state" (*see* Section IV.D, *supra*), and Defendants supply no justification for redundantly construing another term to also account for the operating state.

The prosecution history does not support Defendants' construction.  The portion of the prosecution cited by Defendants reflects the patentees' argument with respect to an entire claim, including the "interactive link," "third information," "application," and "fourth information" terms.  *See* Ex. KK at 31–33 (discussing "storing, on the client computer, an *interactive link* for selectively *re-establishing* the second communication connection to the second host computer for retrieving the *third information* and presenting the *application* and the *fourth information*") (emphases added).  Contrary to Defendants' assertion, this argument does not reflect upon the meaning of the "re-establishing" term in isolation.  *Id*.

## V.    CONCLUSION

Droplets respectfully requests that the Court reject Defendants' proposed constructions for the disputed terms and adopt Droplets' proposed constructions.

McKool 886604v4

DATED: May 17, 2013.

Respectfully submitted,

**MCKOOL SMITH, P.C.**

/s/  *Josh W. Budwin*

Theodore Stevenson, III, LEAD COUNSEL
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-4974
Fax: (214) 978-4044

Sam F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
MCKOOL SMITH, P.C.
104 E. Houston St., Ste. 300, P.O. Box O
Marshall, Texas 75670
Tel: (903) 923-9000
Fax: (903) 923-9095

Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
James E. Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
MCKOOL SMITH, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Tel: (512) 692-8700
Fax: (512) 692-8744

Brett E. Cooper
New York State Bar No. 4011011
bcooper@mckoolsmith.com
Lauren Fornarotto
New York State Bar No. 4804340
lfornarotto@mckoolsmith.com
MCKOOL SMITH, PC
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR PLAINTIFF
DROPLETS, INC.**

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day, May 17, 2013, the following documents were served electronically, via ECF, on all counsel of record registered to receive ECF notifications in this case: the foregoing Responsive Claim Construction Statement.

/s/  *Josh W. Budwin*

McKool 886604v4