**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **DROPLETS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:12-cv-02326-CM** |
| | ) | **ECF CASE** |
| **v.** | ) | |
| | ) | JURY TRIAL REQUESTED |
| **E\*TRADE FINANCIAL** | ) | |
| **CORPORATION et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**<u>DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT ...............................................................................................................2

    A.    Droplets Focuses On Irrelevant, Unproven Extrinsic State Of The Art Rather Than The Relevant Intrinsic State Of The Art. ............................................2

    B.    "interactive link" ('745 Patent, Claims 1, 26, 43, 92)...............................................3

        1.    Droplets clearly and deliberately disavowed bookmarks, cookies, shortcuts, hyperlinks, or Internet addresses (URLs). ...................................4

        2.    Droplets admits the "interactive link" restores operating state....................5

        3.    The "interactive link" must be stored software.............................................5

    C.    "link" ('838 Patent, Claims 2, 4, 9, 10, 11, 16, 18) .................................................6

        1.    "Interactive link" and "link" should be defined interchangeably because Droplets uses the terms interchangeably. ......................................7

        2.    Droplets' recent arguments to the Patent Office for a broad scope of "link" should be afforded no weight. ............................................................8

        3.    Droplets' "interactive link" disclaimers apply equally to "link." ...............8

    D.    "application" (all asserted claims – '745 Patent, Claims 1, 2, 26, 28, 33, 36, 41, 43, 69, 77, 82, 85, 90, 92; '838 Patent, Claims 1, 2, 4, 6, 11, 15, 16, 18, 20, 29, 30) ...................................................................................................................9

    E.    "presenting . . . the application" ('745 Patent, Claim 1; '838 Patent, Claims 1, 2, 15, 16) / "presenting . . . applications" ('745 Patent, Claim 26) / "display the application" ('838 Patent, Claim 29) ...................................................11

    F.    "re-establishing" ('745 Patent, Claim 1; '838 Patent, Claims 2, 16)....................11

    G.    "presentation client computer program code" ('745 Patent, Claim 26) / "presentation client" ('838 Patent, Claims 29, 30) .................................................12

    H.    "information relating to the operating environment" ('745 Patent, Claim 1) / "operating environment" ('745 Patent, Claims 28, 77) / "operating environment information" ('838 Patent, Claims 1, 15) .........................................13

    I.    "operating system environment information" ('838 Patent, Claim 29)................15

III.    CONCLUSION...........................................................................................................15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Beneficial Innovations, Inc. v. Blockdot, Inc.*,
   No. 2:07-cv-263, 2010 WL 2246291 (E.D. Tex. June 3, 2010) ..........................................8

*Bid for Position, LLC v. AOL, LLC*,
   601 F.3d 1311 (Fed. Cir. 2010)..........................................................................................7

*Cordis Corp. v. Boston Scientific Corp.*,
   658 F.3d 1347 (Fed. Cir. 2011).......................................................................................9, 10

*Deere & Co. v. Bush Hog, LLC*,
   703 F.3d 1349 (Fed. Cir. 2012)........................................................................................10

*Edwards Lifesciences LLC v. Cook Inc.*,
   582 F.3d 1322 (Fed. Cir. 2009)..........................................................................................7

*In re Swanson*,
   540 F.3d 1368 (Fed. Cir. 2008)........................................................................................15

*Leighton Techs. LLC v. Oberthur Card Sys., S.A.*,
   358 F. Supp. 2d 361 (S.D.N.Y. 2005)................................................................................2

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004)..........................................................................................9

*Nystrom v. TREX Co.*,
   424 F.3d 1136 (Fed. Cir. 2005)..........................................................................................7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)........................................................................................12

*Poly-Am, L.P. v. GSE Lining Tech, Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004)........................................................................................10

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011)..........................................................................................2

*Sparton Corp. v. United States*,
   68 Fed. Cl. 34 (Fed. Cl. 2005) ...........................................................................................6

*Springs Window Fashions LP v. Novo Indus., LP*,
   323 F.3d 989 (Fed. Cir. 2003)............................................................................................4

*USHIP Intellectual Props., LLC v. United States*,
   No. 2012-5077, 2013 WL 1891406 (Fed. Cir. May 8, 2013) .............................................4

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)......................................................................................9, 11

**STATUTES**

35 U.S.C. § 305.........................................................................................................8, 14

**RULES**

37 C.F.R. 1.552.........................................................................................................8, 14

37 C.F.R. 1.906.........................................................................................................8, 14

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "Adobe" | Adobe Systems Incorporated |
| "Br." | Defendants' Opening Claim Construction Brief (Dkt. 207) |
| "Br. Ex." | the corresponding Exhibit of the Declaration of Brian D. Range submitted with Defendants' Opening Claim Construction (Dkt. 209) |
| "Defendants" | collectively, all Defendants in this litigation |
| "Dickman" | U.S. Patent No. 5,877,765 referenced during prosecution as prior art |
| "Dr. Br." | Plaintiff Droplets, Inc.'s Opening Claim Construction Statement (Dkt. 206) |
| "Dr. Ex." | the corresponding Exhibit of the Declaration of Josh Budwin submitted with Plaintiff Droplets, Inc.'s Opening Claim Construction Statement (Dkt. 208) |
| "Gish" | U.S. Patent No. 5,768,510 referenced during prosecution as prior art |
| "Google" | Google Inc. |
| "LeMole" | U.S. Patent No. 6,009,410 referenced during prosecution as prior art |
| "patents-in-suit" or "patents" | collectively, U.S. Patent Nos. 6,687,745 and 7,502,838 |
| "Resp. Ex." | the corresponding Exhibit of the Declaration of Brian D. Range submitted with this responsive brief |
| "Shaw" | U.S Patent No. 6,362,836 referenced during prosecution as prior art |
| "the '745 Patent" | Refers to U.S. Patent No. 6,687,745 |
| "the '838 Patent" | Refers to U.S. Patent No. 7,502,838 |

Please note that emphasis throughout the brief is added unless otherwise indicated.

## **TABLE OF EXHIBITS**

Reply Ex. P       U.S. Patent No. 6,362,836 (Shaw et al.) issued March 26, 2002 with
                  Certificate of Correction issued April 26, 2002

Reply Ex. Q       U.S. Patent No. 5,768,510 (Gish) issued June 16, 1998

Reply Ex. R       U.S. Patent No. 6,009,410 (LeMole et al.) issued December 28, 1999

Reply Ex. S       Office Action in *Inter Partes* Reexamination, dated May 15, 2013,
                  excerpted from the U.S. PTO File History for the Reexamination of U.S.
                  Patent No. 7,502,838.

## I.   INTRODUCTION

The parties agree on one key point: "Droplets acted as its own lexicographer."  Dr. Br. at 1.
Droplets, however, is a serial lexicographer.  Droplets defined the claim terms at issue one way in
the specification.  It re-defined those terms narrowly during prosecution to overcome the very
close prior art cited in the Patent Office's rejections of its claims.  Now, in litigation, it seeks to
redefine its claim terms so that they are broad enough to encompass Defendants' use of basic
Internet technology—the same technology Droplets denigrates as having "problems" and
"disadvantages" in its patents' specification ('745 Patent at 1:32-4:5) and the same technology
Droplets repeatedly distinguished from its allegedly novel combination of Internet components.

In trying to achieve its newest definitions, Droplets ignores both what was known in art at
the time it filed its patent application and its own statements in the intrinsic record.  For example:

- Droplets frames the Internet as being in a nascent state that lacked Rich Internet Applications in 1999.  Dr. Br. at 1-4.  Actually, the Patent Office rejected Droplets' patent applications based on prior art Rich Internet Applications, and Droplets' '745 Patent survived reexamination only by Droplets significantly narrowing its claim scope.

- Droplets argues that it did not expressly disclaim that "interactive link" cannot be "a bookmark, cookie, shortcut, hyperlink or Internet address (URL)."  Dr. Br. at 19.  However, Droplets unambiguously distinguished prior art by stating, for example, that "*manual URL address inputs, bookmarks or special browser icons are not the same as an interactive link as claimed*."  Br. Ex. M at 55.

- Droplets argues that "interactive link" and "link" are different words so must have different meaning.  Dr. Br. at 15.  But the two words are used interchangeably in the patents' specification except when the specification refers to prior art.  Just three months ago, Droplets tried to escape this by choosing a broad definition of "link" while arguing against the Patent Office's current rejection of every claim of the '838 Patent in reexamination, but these new arguments hold no weight as the Patent Office has again, just two days ago on May 15, 2013, rejected every claim of the '838 Patent.

- Droplets argues that "application" is "software that performs work for a user" in light of its statement that "applications relate to software programs that execute tasks."  Dr. Br. at 11.  However, Droplets misquotes itself; consistent with Defendants' proposed construction, Droplets actually stated that "applications relate to software programs that execute tasks *and produce outputs as a result of the interaction between information*."  Br. Ex. M at 52.

- Droplets argues that Defendants read in a "non-existent disclaimer" limiting applications to executing on a server.  Dr. Br. at 11.  In fact, Droplets distinguished prior art in reexamination by, for example, emphasizing that "[t]he claims are directed to the presentation of an application at the client that is running on a server, rather than the execution of an application at the client computer."  Br. Ex. M at 53.

In contrast to Droplets' litigation-driven constructions that attempt to dodge the intrinsic record, Defendants' proposals are consistent with that record.  Although Droplets was within its rights to act as a lexicographer in writing its patents' common specification—and even in disclaiming claim scope before the Patent Office—that intrinsic evidence is binding.  As such, and for the reasons set forth below and explained in Defendants' opening claim construction brief, the Court should reject Droplets' claim construction proposals and adopt Defendants' constructions.

## II.   ARGUMENT[1]

### A.   Droplets Focuses On Irrelevant, Unproven Extrinsic State Of The Art Rather Than The Relevant Intrinsic State Of The Art.

Droplets' claim construction brief places undue emphasis on unproven extrinsic evidence.  *See Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, 358 F. Supp. 2d 361, 365 (S.D.N.Y. 2005) ("[I]t is improper to resort to extrinsic evidence" to construe claims where intrinsic is sufficient) (citation omitted).  Instead of focusing on Google's garage (Dr. Br. at 1), Droplets' customer list[2] (*id.* at 6), or how a "#" might be used in a URL (*id.* at 21), Defendants urge the Court to focus on the prior art that the Patent Office considered in rejecting Droplets' patent applications, and Droplets' responses to that art.  *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231 (Fed. Cir. 2011) ("Our cases establish that prior art . . . cited in the prosecution history of the patent constitutes intrinsic evidence." (internal quotations and citation omitted)).  That prior art shows Droplets did not invent "Rich Internet Applications," and Droplets clearly and deliberately disavowed claim scope in light of the prior art.  For example:

- U.S. Patent No. 6,362,836 to Shaw discloses a "universal application (UAP) server" for providing applications to a wide variety of client devices.  Reply Ex. P at Abstract.  Web pages generated by the UAP server contain "smart applets" represented as "graphical icons" that allow a user to "invoke services or applications or view documents."  *Id.* at 10:25-46.  Shaw also discloses reconnection to applications.  *Id.*  During reexamination of the '745 Patent, Droplets distinguished Shaw by arguing that "[a]n interactive link provides the means for performing the re-establishment in the claims, as opposed to the server in Shaw."  Br. Ex. M at 39.  Droplets also emphasized that, in Shaw, "links to

---

[1]   Defendants do not dispute Droplets' proposed construction for "presentation information."

[2]   While Defendants do not agree with Droplets' characterization of Droplets' history (Dr. Br. at 5-6) and do not agree that Droplets' settlements with others are due to recognition of any value of Droplets' inventions (Dr. Br. at 1), these points are irrelevant to claim construction.

applications are **not stored** on the client or the server, rather these links are generated by the server in response to a user request." *Id.* at 38 (emphasis original). During the ongoing reexamination of the '838 Patent, Droplets has not been able to overcome Shaw as prior art. Reply Ex. S.

- U.S. Patent No. 5,768,510 to Gish discloses Internet applications including "a client (front end) program which communicates utilizing a network with a server (back end) program." Reply Ex. Q at 5:24-27. Droplets distinguished Gish (and references combined with Gish) as relying on Internet shortcuts and URLs rather than interactive links and as disclosing a "stand-alone application on each client…rather than an application executing remotely." Br. Ex. M at 25-26.

- U.S. Patent No. 6,009,410 to LeMole discloses creation of customized web pages based on user profile. Reply Ex. R at Abstract. Droplets distinguished LeMole by arguing its "manual URL address inputs, bookmarks or special browser icons are not the same as an interactive link as claimed." Br. Ex. M. at 55. Droplets also distinguished LeMole's presentation of "information" which "relates to data and messages whereas [Droplets'] applications relate to software programs that execute tasks and produce outputs as a result of the interaction between information." *Id.* at 52.

As explained below, Defendants' proposed constructions are consistent with the statements Droplets made to overcome this intrinsic prior art, while Droplets' proposals are inconsistent.

### B.   "interactive link" ('745 Patent, Claims 1, 26, 43, 92)

| Droplets | Defendants (as modified) |
|---|---|
| A link and information relating to an operating state of an application.<br><br>Previously offered in *Adobe* litigation: A data structure, stored outside the browser, selected by the user to directly invoke remotely stored applications. Br. Ex. F at 4. | <u>Stored</u> software ~~stored on a client computer~~[3] that restores a previous operating state of a remote application. Based on Droplets' disclaimer, an interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL). |

Defendants have adjusted their proposed construction in recognition that, in some instances, an interactive link could be stored on a server. Dr. Br. at 18. But as explained below, the remainder of Droplets' proposed construction is contrary to Droplets' clear and deliberate disavowals of claim scope during prosecution and the patents' common specification. Due to Droplets' statements, (1) the interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL), (2) the interactive link must "restore" and not just "relate" to a previous operating state, and (3) the interactive link must be stored software.

---

[3]    The underline and strikethrough are included to indicate Defendants' modification to Defendants' previously proposed construction.

1.      **Droplets clearly and deliberately disavowed bookmarks, cookies, shortcuts, hyperlinks, or Internet addresses (URLs).**

Droplets' proposed definition of "interactive link" would impermissibly recapture subject matter that was surrendered during the prosecution of the patent. *Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 995 (Fed. Cir. 2003).  For example:

- To overcome prior art, Droplets presented the Patent Office with an entire section of argument entitled:  "Internet shortcuts do not represent an 'interactive link.'"  Br. Ex. M at 27.  This heading, along with Droplets' argument that "[i]nternet shortcuts are not graphical representations of interactive links" was repeated verbatim three times in order to distinguish prior art. *Id*. at 28, 34, 61-62.

- Droplets further stated that "manual URL address inputs, bookmarks or special browser icons are not the same as an interactive link as claimed" and that these "browser elements are not interactive and do not perform the functions of the interactive link as claimed." *Id.* at 55.

It is hard to fathom a clearer or more deliberate disavowal of claim scope than this particular intrinsic evidence.

In its brief, Droplets attempts to rewrite history.  In particular, Droplets states that Gish, Dickman, and LeMole were distinguishable because they do not include "information relating to an operating state of an application."  Dr. Br. at 20.  But that is not what Droplets told the Patent Office; Droplets told the Patent Office that URLs and Internet shortcuts are not interactive links and that "manual URL address inputs, bookmarks or special browser icons" are not "an interactive link as claimed."  Br. Ex. M at  55.  And even if, for the sake of argument, Droplets *could have* made other arguments for distinguishing the asserted art, Droplets is nonetheless held as a matter of law to the distinguishing statements it actually made. *See, e.g. USHIP Intellectual Props., LLC v. United States*, No. 2012-5077, 2013 WL 1891406 (Fed. Cir. May 8, 2013) (holding that prosecution disclaimer is binding even if not necessary to overcome rejection).

Droplets also argues that the terms "bookmarks," "cookies," "shortcuts," "hyperlinks," and "Internet addresses" are "ever-evolving."  Dr. Br. at 21.  But if Droplets invented a special kind of "bookmark," "cookie," "shortcut," "hyperlink," or "Internet address," Droplets should have told the Patent Office about this.  Rather than explaining how Droplets invented, for example, a new "bookmark" or new "cookie," Droplets denigrated these elements as prior art that lacked the

advantages of an interactive link ('745 Patent at 2:37-4:39) and repeatedly distinguished its interactive link from prior art disclosing these elements.[4]  Droplets' disavowal is absolutely unambiguous.  The Court should hold that an "interactive link" cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL).

### 2.      Droplets admits the "interactive link" restores operating state.

Droplets correctly points out that "[t]he specification, in discussing 'interactive links,' states that they may be used to *restore* an 'operating state' of an application."  Dr. Br. at 16 (citing '745 Patent at 3:66-4:5 where it states "a need for the interactive link to include facilities for *restoring* previous operating states of the application....").  Droplets, however, provides no support for its proposed construction that an interactive link might merely "relate" to an operating state. Moreover, merely *relating* to an operating state is overbroad because, for example, Droplets could argue that initiating a new operating state "relates" to an operating state even though it would not be *restoring* an operating state.  As such, the Court should require that the interactive link "restore a previous operating state."

### 3.      The "interactive link" must be stored software.

Because of Droplets' clear and deliberate disavowal of claim scope during prosecution, the "interactive link" must be stored rather than transient.  In particular, Droplets explained that prior art (Shaw) "does not identically disclose the claimed 'interactive link'" because Shaw's links "are **not stored** on the client or server, rather these links are generated by the server in response to a user request."  Br. Ex. M at 38 (emphasis original).  Droplets' construction is overly broad because it does not account for this disavowal, and instead would allow Droplets to reclaim the transient links found in prior art that Droplets distinguished from the claimed interactive link.

_____

[4]      Even now, Defendants and the Court cannot know what kind of special bookmark, if any, Droplets claims as its invention.  For example, Droplets implies that it invented web addresses that refer to an operating state.  Dr. Br. at 21.  If necessary, Defendants will establish this is not the case, but such a diversion into extrinsic evidence should not be necessary because Droplets' disclaimers prevent the "interactive link" from being a hyperlink or shortcut.

Droplets argues that requiring that the interactive link be "**stored**" is "redundant" because certain Droplets' claims explicitly refer to the interactive link being stored.  Dr. Br. at 17.  However, Droplets expressly stated that its "**stored"** link argument to distinguish Shaw is "equally applicable to claims 17 and 26" (*i.e.*, all independent claims, and thus all claims).  Br. Ex. M at  41.  Claim 26 does not expressly state that the interactive link is stored.  Thus, while a construction including "stored" is not needed to know that the interactive link of Claim 1 is stored, if no construction is adopted, Droplets would improperly escape the disclaimer it made as to Claim 26.  To prevent this outcome, Droplets' claims should be limited to "stored" interactive links.

Additionally, because the interactive link must be able to restore a previous operating state (*see* Section II(B)(2), *supra*), it must be software.  Computers only act if instructed to do so, and the instructions that tell the computer what to do are software.  The specification explains how the interactive link is downloaded and, once on a client computer, instructs the client computer to restore an operating state.[5]  *See, e.g.,* '745 Patent at 3:66-4:5; 5:30-38; 15:18-23.  In addition, "software" is preferable to Droplets' suggested construction using the word "link" because using "link" to define "interactive link" is circular and unhelpful.  *Cf., e.g., Sparton Corp. v. United States*, 68 Fed. Cl. 34, 47 (Fed. Cl. 2005) (holding that circular definition "is clearly improper").

As such, the Court should construe interactive link as requiring "stored software."

**C.    "link" ('838 Patent, Claims 2, 4, 9, 10, 11, 16, 18)**

| Droplets | Defendants (as modified) |
|---|---|
| An active field that allows user selection and performance of an action upon user selection. | Stored software ~~stored on a client computer~~ that restores a previous operating state of a remote application.  Based on Droplets' disclaimer, an interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL). |

---

[5]    Although not put at issue by either side's proposed constructions, Defendants agree with Droplets that the interactive link also cannot be a stand-alone application because of Droplets' disclaimers.  Dr. Br. at 17 (citing passage in prosecution history where Droplets distinguishes use of the interactive link with use of a stand-alone application).

As to "link," Droplets argues that the specification defines "interactive link" and "link" differently, that "link" is broadly defined by Droplets' statements during ongoing reexamination, and that no disclaimer applies to "link."  As explained below, all three arguments lack merit.

### 1.    "Interactive link" and "link" should be defined interchangeably because Droplets uses the terms interchangeably.

Defendants explain how the patents' common specification interchangeably uses the words "link" and "interactive link" in the context of the alleged invention.  Br. at 12-14.  While Droplets cites instances where the term "link" is used more broadly than "interactive link" (Dr. Br. at 18-19), the argument is misleading because, as Defendants point out in their opening brief, in each instance the patents' specification describes *prior art* links—not the "link" at the heart of Droplets' alleged invention.  *See, e.g.,* '745 Patent at 2:51-56 (describing "link, such as a hyperlink," in the context of prior art); 2:36-42 (describing web sites "linked together" in the context of prior art).

In addition, Droplets argues that different terms must have different meanings.  Dr. Br. at 15.  However, this is not true when there is intrinsic evidence to the contrary, such as corresponding and interchangeable use of the different terms throughout the claims, specification, and prosecution history.  The Federal Circuit has previously applied identical constructions to shortened terms when used interchangeably in the intrinsic record.  *See, e.g., Bid for Position, LLC v. AOL, LLC*, 601 F.3d 1311, 1317-18 (Fed. Cir. 2010) (holding "bid" and "value of the bid" have the same meaning because claim language and specification used the terms interchangeably); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329-1330 (Fed. Cir. 2009) (holding "graft" and "intraluminal graft" have same meaning); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("board" and "wood decking board" could cover the same subject matter based on written description).  Such is the case here.  *See* Br. at 12-14.  The patents' specification uses "link" as shorthand for "interactive link," so the same construction should apply to both terms.

Indeed, Defendants' position here is consistent with the Patent Office's understanding of the term "link."  During the ongoing reexamination of the '838 Patent, Droplets argued that its "link" is not disclosed by Shaw because it requires "re-establishing the communication

connection." Reply Ex. S at 19. The Patent Office rejected this argument by citing the '838 Patent at 5:19-35 where it discloses an "interactive link" akin to the Shaw disclosure. *Id.*; *see also id.* at 27-28. In other words, the Patent Office likewise is treating "link" and "interactive link" interchangeably just as Droplets did in its patents' specification and just as this Court should.

### 2. Droplets' recent arguments to the Patent Office for a broad scope of "link" should be afforded no weight.

Amazingly, Droplets bases its proposed construction for "link" on statements it made to the Patent Office in reexamination just four months ago, on January 15, 2013. Dr. Br. at 18-19 (citing Dr. Ex. MM). However, on May 15, 2013 (just two days ago), the Patent Office responded by again rejecting every claim of the '838 Patent as invalid in light of prior art. Reply Ex. S. Thus, Droplets' argument equates to: "We just argued the same thing to the Patent Office and even though the Patent Office disagrees, this Court should give Droplets' argument weight."

Droplets' position is wrong for at least three reasons. First, no law supports the notion that a patentee may bootstrap *the patentee's own self-serving statements* in an ongoing reexamination (that have not been endorsed by the Patent Office) into persuasive claim construction evidence. Second, the Patent Office has maintained its position that the claims of the '838 Patent are unpatentable, thus making Droplets' assertions about the scope of its claims a moot point. Third, reexamination cannot enlarge the scope of the claims of the patent. 37 C.F.R. 1.906; *see also* 37 C.F.R. 1.552 (same for *ex parte* reexamination); 35 U.S.C. § 305. Thus, Droplets' statements in reexamination can narrow claim scope, but they cannot enlarge it. *Compare to Beneficial Innovations, Inc. v. Blockdot, Inc.*, No. 2:07-cv-263, 2010 WL 2246291, at *3 (E.D. Tex. June 3, 2010) (holding that patentee's contradictory positions in an unfinished reexamination may be used against it). As such, Droplets' recent statements to the Patent Office regarding the scope of the "link" limitation should be afforded no weight.

### 3. Droplets' "interactive link" disclaimers apply equally to "link."

As explained above, Droplets clearly and deliberately (a) disclaimed that an "interactive link" could be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) and (b)

disclaimed any non-stored link.  *See* Sections II(B)(1) and (3), *supra*.  In light of the specification, "link" and "interactive link" should be construed the same (*see* Section II(C)(1), *supra*) so these limitations on "interactive link" apply to "link" as well.

Moreover, the disclaimers made during prosecution of the '745 Patent apply as a matter of law to the claims of the '838 Patent (the child of the '745 Patent) because "a disclaimer in the parent application carries forward into the construction of the same claim term in the child." *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1356, n.5 (Fed. Cir. 2011) (holding that term "undulating" in child patent was limited by statements made during prosecution of parent). This is true even where disclaimer occurs after issuance of the child patent.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306-1307 (Fed. Cir. 2007) (rejecting argument that disclaimer should not apply because it occurred after issuance of child patent-in-suit, and holding that term "localized wireless gateway system" in child patent were limited by later statements from parent patent's prosecution); *cf. Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (holding that terms in earlier-issued patent were limited by statements made during prosecution of later-issued sibling patent).  Thus, Defendants' construction for "link" should be adopted because it equates "link" and "interactive link" just as Droplets did in its patents' specification and because it incorporates Droplets' clear and deliberate disclaimers.

**D.**   **"application" (all asserted claims – '745 Patent, Claims 1, 2, 26, 28, 33, 36, 41, 43, 69, 77, 82, 85, 90, 92; '838 Patent, Claims 1, 2, 4, 6, 11, 15, 16, 18, 20, 29, 30)**

| Droplets | Defendants |
|---|---|
| Software that performs work for a user. | A computer program that executes specific tasks and produces outputs.  Because of Droplets' disclaimer, the application must execute on a remote server. |

The parties present two disputes related to this term: how Droplets defined "application" and whether Droplets disclaimed a local application.  As to the definitional dispute, Defendants agree with Droplets that the prosecution history is determinative.  Dr. Br. at 11.  In particular, Droplets told the Patent Office that applications are "software *programs* designed to perform specific tasks for a user."  Br. Ex. M at 51.  Additionally, Droplets repeatedly told the Patent Office

that "applications relate to software programs that execute tasks ***and produce outputs*** as a result of interaction between information." *Id.* at 52.  Now, before this Court, Droplets ties itself to these definitions but (1) ignores that it described applications as "software programs," not merely "software," and (2) deceptively misquotes itself as stating that "applications relate to software programs that execute tasks" (Dr. Br. at 11) while ignoring the "and produce outputs" portion of its full statement to the Patent Office.  Droplets should be held to the entire definition of application it presented to the Patent Office as reflected in Defendants' proposed construction.

With regard to the disclaimer dispute, the vast majority of Droplets' citations to the specification do not state the application can execute locally.  Dr. Br. at 10.  While Droplets notes that one embodiment does describe a local application (*id.* citing '745 Patent at 11:50-59), Droplets clearly and deliberately disavowed that embodiment at least three times during reexamination.  In particular, Droplets distinguished prior art by emphasizing that its claims describe an "application running on a remote server," "executing remotely," and "running on a server, rather than execution of an application at the client computer."  Br. Ex. M at 43-44, 25-26, 53.  These disclaimers are consistent with the overwhelming weight of the specification's repeated emphasis on the importance of remote execution of the application.  Indeed, both patents' titles focus the alleged invention on "remote applications" and "remotely stored applications," and this description of the alleged invention carries substantial weight.  *Cf. Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (holding that use of term "rotary cutter deck" in title supported limiting claim); *Poly-Am, L.P. v. GSE Lining Tech, Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (holding that use of "blown-film" in title and summary of invention supported claims being limited to "blown-film" liner).

In addition, Droplets admitted its prosecution disclaimers as to the '745 Patent, Claim 1 were "equally applicable" to the '745 Patent, Claims 17 and 26 (*i.e.*, all independent claims, and thus all claims).  Br. Ex. M. at 26, 49, 60.  As with "link," disclaimers during prosecution of the '745 Patent also apply to the '838 Patent because "a disclaimer in the parent application carries forward into the construction of the same claim term in the child."  *Cordis Corp.*, 658 F.3d at 1356,

-10-

n.5; *see also Verizon Servs. Corp.*, 503 F.3d at 1306-1307 (holding that parent's disclaimers apply even if made after issuance of child patent). Thus, Defendants' construction for "application" should be adopted because it encompasses Droplets' full, intrinsic definitions and encompasses Droplets' clear and deliberate disclaimer of local application execution.

E.   **"presenting . . . the application" ('745 Patent, Claim 1; '838 Patent, Claims 1, 2, 15, 16) / "presenting . . . applications" ('745 Patent, Claim 26) / "display the application" ('838 Patent, Claim 29)**

| Droplets | Defendants |
|---|---|
| Displaying the application and enabling interaction with the user according to the user interface requirements. | Displaying the application across a network and enabling interaction with the user according to the user interface requirements. Because of Droplets' disclaimer, the application must execute on a remote server. |

As explained in Section II(D), *supra*, the application must execute on a remote server due to Droplets' disclaimers. Droplets' citations to the specification support Defendants' position, not Droplets'. For example, Droplets relies on a passage from the '745 Patent at 9:65-10:4. Dr. Br. at 24. The sentence immediately preceding Droplets' quoted passage refers to invoking "remotely stored applications." '745 Patent at 9:62-65. In other words, the application executes remotely to present "*over the communication connection*" (i.e., across a network) various graphical objects. *Id.* at 9:62-10:4. As such, consistent with the specification and Droplets' clear and deliberate disclaimers, the Court should adopt Defendants' construction.

F.   **"re-establishing" ('745 Patent, Claim 1; '838 Patent, Claims 2, 16)**

| Droplets | Defendants |
|---|---|
| Plain meaning | restoring the previous operating state of a remote application session |

As Defendants explained in their initial brief, the patents' specification presents two kinds of "re-establishing." In the prosecution history, Droplets distinguished invalidating prior art by explaining that its claims *require*[6] performance of one of those kinds of re-establishing—the

---

[6]   The first kind of re-establishing (the ability to restart an application as described in the '745 Patent at 16:38-52 and 17:35-57) may also be present, but is not required. Due to Droplets' disclaimer, the ability to restore the previous operating state of a remote application session is required.

restoration of a previous operating state of a remote application session.  Br. at 18-20.  But neither

the claim language cited by Droplets (Dr. Br. at 25) nor Droplets' proposed "plain meaning"

construction properly clarify which kind of re-establishing is required by this claim term.  *Cf. O2*

*Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) (explaining

that plain meaning is inadequate when it does not resolve parties' dispute about claim scope).  As

such, the Court should adopt Defendants' proposed construction.

> ### G.    "presentation client computer program code" ('745 Patent, Claim 26) / "presentation client" ('838 Patent, Claims 29, 30)

| Droplets | Defendants |
|---|---|
| Software, running on the client, that is capable of receiving user input and presenting remotely stored applications to users. | Software installed at the client computer that cooperates either with web browsers when in a web-based environment, or with stand-alone software programs when in other environments. |

For this term, Droplets argues against a straw-man.  Defendants' construction does not

require that the "presentation client" must be "separate" or "stand-alone."  Instead, Defendants

agree that the "presentation client" may be used in conjunction with a browser.  By focusing on a

straw-man, Droplets fails to refute what is really at issue: that the presentation client is installed

and is separate from a web browser.

As to installation, the specification defines the presentation client as "installed at the client

computer."  '745 Patent at 8:5-13; *see also id*. at 9:46-50.  Consistent with this, the specification

describes embodiments with installation.  For example, the specification explains that the

presentation client may be "Java applet[s]" (which may be installed).  *Id.* at 27:36-43. Droplets

also argues that Java applets and ActiveX are not "separate[ly] installed" (Dr. Br. at 23) but the key

word here is "separately."  These technologies may cooperate with a web browser (*see, e.g.,* '745

Patent at 10:56-64) rather than being separate, but this does not mean they are not installed or

cannot be installed.  In sum, the parties present the Court with choosing whether the presentation

client is "running" or "installed," and "installed" is the correct choice because that is the word

Droplets chose when defining presentation client in the patents' specification.

-12-

Second, Droplets argues that the presentation client could be "built into a Web browser." Dr. Br. at 23.  However, Droplets' citation is entirely off-point, and the specification does not describe any instance where the "presentation client" is part of a web browser.  Rather, the specification defines the presentation client as being "designed to cooperate with many web browsers of differing vendors."  '745 Patent at 27:23-25.  Defendants agree that Droplets acted as its "own lexicographer for this term" (Dr. Br. at 22), but Droplets defined the presentation client as cooperating with the web browser (as opposed to, for example, being the same as a web browser).  *Id.* at 21-22.  Thus, this Court should reject Droplets' overbroad proposal and adopt Defendants' construction.

### H.      "information relating to the operating environment" ('745 Patent, Claim 1) / "operating environment" ('745 Patent, Claims 28, 77) / "operating environment information" ('838 Patent, Claims 1, 15)

| Droplets | Defendants |
|---|---|
| Information relating to the client computer's operating system, user interface, accessibility, or hardware capabilities. | Information identifying client computer hardware. |

Defendants agree with Droplets that this term "may include … information about the operating system, user interface, and accessibility" and anything else.  Dr. Br. at 13.  Defendants' construction is consistent with this, and Defendants do not intend that "operating system" or any other information in addition to hardware cannot also be a part of the operating environment information. Droplets' either/or construction, on the other hand, means that only non-hardware information would meet the claim limitation. But the plain meaning of "operating environment" includes hardware information, and the patents' specification consistently requires that operating environment information identify the client hardware.  Br. at 22-23.

The two portions of the specification that Droplets relies on actually support Defendants' position, not Droplets'.  Dr. Br. at 13.  First, the '745 Patent at 8:63-67 provides an example where operating environment is operating system ***and*** hardware.  This is an example where hardware is

required, consistent with Defendants' construction but inconsistent with Droplets' view that "operating system" alone could constitute the operating environment.

Second, Droplets relies on the parenthetical at lines 11:39-40—"(e.g., the client computer's operating system, user interface *and* hardware capabilities)"—to argue that "the three OEI types are merely examples…." Dr. Br. at 13. But the parenthetical provides one example, not three. The single example of operating environment information is "the client computer's operating system, user interface *and* hardware capabilities," where "and" is used conjunctively to indicate the three types of data together comprise the example information. If user interface standing alone or operating system standing alone were each separate examples, the emphasized "and" grammatically should have been an "or." Thus, the parenthetical is consistent with Defendants' construction but inconsistent with Droplets' proposal.

Indeed, all of the specification's examples of operating environment information include hardware information. Br. at 22-23. Even Droplets' reference to "accessibility" is, in reality, hardware identification. Dr. Br. at 13 (citing type of device as its example of "accessibility"). Defendants' construction recognizes that, consistent with the plain meaning of "operating environment," hardware is the only common denominator between all of the different examples of operating environment information in the specification.

The patents' claims also support Defendants' position. Claims 27 and 76 of the '745 Patent require operating environment information to "further include" both "information regarding an operating system and hardware capabilities of the client computer." This additional limitation makes sense in light of Defendants' construction; the dependent claims further narrow independent claims that require only identification of hardware.[7]

_____

[7]   Droplets may argue that Claims 27 and/or 76 support a broader construction of "operating environment" due to claim differentiation. However, Droplets added Claims 27 and 76 as new claims to the '745 Patent during reexamination, and reexamination cannot broaden claims. 37 C.F.R. 1.906; 35 U.S.C. § 305; *see also* 37 C.F.R. 1.552 (same for *ex parte* reexamination). Thus, the maximum scope of "operating environment" is set prior to reexamination, and the Court should reject any argument that amendments made during reexamination—including the addition of Claims 27 and 76—broadened the meaning of "operating environment." (*continued*)

Thus, Defendants' position is consistent with the patents' specification while Droplets' position would stretch its patent so broadly that, for example, "operating environment" could refer to "user interface" standing alone—a meaning of "operating environment" that the specification does not contemplate.  As such, Defendants' construction should be adopted.

**I.**     **"operating system environment information"** **('838 Patent, Claim 29)**

| Droplets | Defendants |
|---|---|
| Information relating to the client computer's operating system, user interface, accessibility, or hardware capabilities. | Plain meaning, or, alternatively, "information relating to the client computer's operating system" |

As to this term, Droplets is again acting as its own lexicographer, but without any intrinsic evidence to back up its definition.  Droplets asks the Court to ignore the patentee's inclusion of the word "system," but fails to offer any support as to why it should do so.  Droplets also does not explain how "operating system environment" could be, for example, accessibility or hardware capabilities.  Moreover, unlike "link" and "interactive link," the specification does not use "operating system environment information" and "operating environment" interchangeably. Instead, the patents' specification consistently refers to the "operating system" as being what the Court would expect—Windows or Linux or similar.  *See, e.g.,* '745 Patent at 18:18-22.

Droplets used this term in the '838 Patent, Claim 29 to refer specifically to operating system information.  Unlike "operating environment" in Droplets' other claims, no intrinsic evidence suggests that "operating system environment information" must include hardware.  The term should therefore be construed based on plain meaning, because the claims and specification offer nothing on which to build any other definition.

**III.**   **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to adopt Defendants' proposed constructions for the '745 and '838 Patents.

---

Similarly, to the extent Droplets relies on language from the '838 Patent's ongoing reexamination, that reexamination cannot broaden the '838 Patent's claims.  In addition, the Patent Office considers claims under a different standard than district courts, giving claims the "broadest reasonable interpretation."  *See, e.g., In re Swanson*, 540 F.3d 1368, 1377-8 (Fed. Cir. 2008).

Dated:  May 17, 2013                     Respectfully Submitted,


                     By:     */s/ Michael B. Levin*_____

                             Michael B. Levin
                             mlevin@wsgr.com
                             WILSON SONSINI GOODRICH &
                             ROSATI
                             Professional Corporation
                             650 Page Mill Road
                             Palo Alto, California 94304
                             Telephone: 650.493.9300
                             Facsimile: 650.493.6811

                             Brian Range
                             brange@wsgr.com
                             WILSON SONSINI GOODRICH &
                             ROSATI
                             Professional Corporation
                             900 South Capital of Texas Highway
                             Las Cimas IV, Fifth Floor
                             Austin, Texas 78746-5546
                             Telephone: 512.338.5400
                             Facsimile: 512.338.5499

                             Larry L. Shatzer
                             lshatzer@wsgr.com
                             WILSON SONSINI GOODRICH &
                             ROSATI
                             Professional Corporation
                             1700 K Street, NW, Fifth Floor
                             Washington, DC 20006
                             Telephone: 202.973.8800
                             Facsimile: 202.973.8899

                             Jessica Leigh Margolis
                             jmargolis@wsgr.com
                             WILSON SONSINI GOODRICH &
                             ROSATI
                             Professional Corporation
                             1301 Avenue of the Americas, 40th Floor
                             New York, NY 10019
                             Telephone: 212.999.5800
                             Facsimile: 212.999.5899

                             **Counsel for Defendants,
                             E*TRADE FINANCIAL
                             CORPORATION, E*TRADE
                             SECURITIES, LLC, E*TRADE BANK,
                             TD AMERITRADE HOLDING
                             CORPORATION, TD AMERITRADE,
                             INC., SCOTTRADE, INC. AND**

                             -16-

**SCOTTRADE FINANCIAL SERVICES, INC., THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO., INC., CHARLES SCHWAB BANK**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 17, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 5.2.

*/s/ Michael B. Levin*
Michael B. Levin
