## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DROPLETS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:12-cv-02326-CM** |
| | ) | **ECF CASE** |
| **v.** | ) | |
| | ) | JURY TRIAL REQUESTED |
| **E*TRADE FINANCIAL** | ) | |
| **CORPORATION et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' RESPONSE TO DROPLETS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

## I.      INTRODUCTION

Defendants submit this brief for two reasons: (1) to explain how Droplets' latest brief inappropriately seeks reconsideration of the Court's claim construction; and (2) to outline the extrinsic evidence of record, which clearly shows that there have been no material changes to the prior art technologies since 1999.  For these reasons, and for the reasons explained below, Defendants urge the Court to enforce Droplets' unequivocal disclaimers by holding "[a]n interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)."

## II.     ARGUMENT

### A.      Droplets Should Be Held To The Full Scope Of Its Disclaimers.

Droplets told the Patent Office that "[i]nternet shortcuts do not represent an 'interactive link.'"  Dkt. 209, Ex. M at 27.  Droplets also repeatedly told the Patent Office that Internet shortcuts "encapsulate URLs … and cannot perform the functions of the interactive link as claimed.  Internet shortcuts contain only URLS."  Id. at 27-28, 34, 61-62.  The Court correctly held that "[t]hose statements qualify as clear disclaimers" and that "Droplets is bound by them."  Dkt. 218 at 12.

Droplets now improperly[1] seeks reconsideration of this Court's holding that Droplets is "bound by" its "clear disclaimers" (Dkt. 218 at 12).  More specifically, Droplets argues that construing an interactive link to include "facilities for restoring previous operating states" is enough to distinguish prior art technologies, and therefore its clear disclaimer as to those technologies can be ignored.  Dkt. 219 at 2, 14-15.  However, the law is clear that disclaimers must be enforced even if they were unnecessary to distinguish prior art.  *See, e.g. USHIP Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) (holding that prosecution disclaimer applies even if unnecessary to overcome rejection).  Moreover, even if Droplets could

---

[1]      Contrary to Local Civil Rule 6.3, Droplets' November 15, 2013, Supplemental Claim Construction Brief was not filed within fourteen days of the Court's October 21, 2013 Claim Construction order (Dkt. 218) and does not "[set] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  As explained in Section II(C) below, Droplets also incorrectly seeks reconsideration of whether its disclaimer includes cookies.

have distinguished prior art by making narrower disclaimers, Droplets did not actually do this. Droplets must be held as a matter of law to the full scope of what it actually disclaimed. *See, e.g. id*. The "facilities" clause alone is not sufficient to accomplish this.

Incorporating Droplets' broad disclaimer in the construction of "interactive link" is both proper and critical to focusing the issues in this litigation. For example, Droplets appears to accuse prior art Internet bookmarks of satisfying the "interactive link" element of the '745 Patent (to the extent Defendants understand Droplets' vague infringement contentions). Dkt. 221 at ¶¶ 21-22. Thus, a clear ruling that "[a]n interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)" is necessary to prevent Droplets from continuing to accuse this old and disclaimed technology as the litigation moves forward.

### B.   The Use Of Bookmarks, Cookies, Shortcuts, Hyperlinks, and URLs Has Not Materially Changed Since 1999.

As demonstrated in the Declaration of Michael Shamos (Dkt. 221) and the attached exhibits, the meaning of the terms bookmarks, cookies, shortcuts, hyperlinks, and URLs has not changed in any material respect since 1999. With respect to cookies, Droplets makes no argument to the contrary. With respect to bookmarks, shortcuts, and hyperlinks, Droplets makes no argument except to the extent that each of these technologies makes use of a supposedly evolved URL. Dkt. 219 at 4-5.

Regarding URLs in 1999 (and shortcuts, bookmarks, and hyperlinks using URLs), URLs were more than just text strings pointing to a web location, and URLs have not fundamentally changed since that time. For example, the 1999 Yahoo web site[2] used the "query string" portion of the URL (characters coming after the "?" character) to pass parameters to a web server regarding the type of stock chart an application should display—similar to Defendants' sites that Droplets now accuses of infringement. Dkt. 221 at ¶¶ 40-41. Similarly:

---

[2]   Sophisticated 1999 web sites like Yahoo and CD Now can be contrasted to the trivial and deceptively low-tech University of Denver example provided by Dr. Martin. Dkt. 222-2, Ex. PP at 7-8.

- The 1998 book USING WINDOWS 95 WITH INTERNET EXPLORER explains that a URL includes parameters after the path that can include "query information to be passed to a web server."  Dkt. 221 at ¶ 38, Ex. V.

- U.S. Patent No. 5,796,952 (filed March 21, 1997 and issued August 18, 1998) explains that information transmitted from a client to server "can be embedded within the URL." Dkt. 221 at ¶ 39, Ex. H.

- U.S. Patent No. 5,708,780 (filed June 7, 1995 and issued January 13, 1998) explains that a "session identifier" string can be included "as part of a path name in a uniform resource locator [URL]" in order to maintain a web browsing session.  Dkt. 221 at ¶ 43, Ex. N.

- The CD Now web site as of 1997 used a session identifier within a URL in a similar manner.  Dkt. 221 at ¶ 44-45, Ex. O.

In sum, URLs and shortcuts have not materially changed since Droplets disclaimed those prior art technologies.  Thus, Droplets should not be permitted to avoid its disclaimers.

Droplets attempts to confuse the issues at hand by emphasizing the role of fragment identifiers (using a "#") and ignoring query strings (using a "?").  This is a red herring.  There is no technological distinction between query strings and fragment identifiers; both the "?" and the "#" signs were known to separate the Internet address portion of the URL from the portion of the URL providing other information.[3]  As explained by Professor Shamos, like query strings, fragment identifiers also existed prior to 1999.  Dkt. 221 at ¶ 38, Ex. V.  In fact, the "fragment identifier" is fully described in RFC 1738 (Dkt. 221 at Ex. L), which issued in December 1994.  The format and

---

[3]     Somewhat incredibly, one of Droplets' named inventors and Droplets' expert appear to allege that they were unaware of the use of query strings embedded in URLs to pass information, including state information, to and from a web server.  Dkt. 219 at 5, 9-10.  Droplets even relies on semi-anonymous blog posts from 2005 to try to establish that people did not previously know how to use URLs to pass session information.  Dkt. 222 at Ex. PP, ¶¶ 19-20, Ex. TT.  However, claim construction is based on the understanding of one of ordinary skill in the art, and "[the law] presumes that all prior art references in the field of the invention are available to this hypothetical skilled artisan."  *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).  Thus, the professed ignorance of Droplets' inventor, Droplets' expert, and unidentifiable blog posters cannot negate the actual state of the prior art as of 1999 and earlier.

syntax of URLs (including the fragment identifier portion) has not changed since 1994. *See* Dkt. 221 at ¶¶ 35-48.  Instead, the evidence shows that URLs (and shortcuts, bookmarks, and hyperlinks) could embed and did embed parameters such as session ID in 1999 and earlier.  There is no reason why the alleged ***additional*** use of the "#" to pass session information has any bearing on the meaning of URL or should have any bearing on the scope of Droplets' disclaimer.

Moreover, with respect to this litigation, there is no material difference between parsing with a "?" as compared to a "#".  Droplets has not clearly identified the use of fragment identifiers in its infringement contentions.  Instead, Droplets appears to allege that bookmarks are an "interactive link" without even identifying the underlying URL.  Dkt. 221 at ¶¶ 21-22.

Because the meaning of these prior art terms has not changed in any relevant manner since 1999, the Court should enforce Droplets' disclaimers by holding "[a]n interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)."  *Cf., e.g.,* Dkt. 209, Ex. M at 27-28, 34, 61-62 ("Internet shortcuts encapsulate URLs … and cannot perform the functions of the interactive link as claimed").

### C.    Droplets Disclaimed Cookies In The '745 Specification.

Finally, Droplets incorrectly argues for reconsideration as to whether it disclaimed cookies.  Dkt. 219 at 13-14.  Droplets not only disclaimed cookies in the specification of the '745 Patent, but it offers no explanation as to this intentional disclaimer.  The '745 Patent specification first explains what a cookie is and how cookies are used in existing technology.  The specification then explains that perceived problems with cookies would be overcome by "storing an interactive link on a user's computer," as embodied by the claimed invention.  '745 Patent at 3:52-4:2.  The "Detailed Description" section of the specification further disclaims such "cookies" by stating that "*the present invention avoids* a perceived disadvantage in conventional state tracking methodologies, for example, *the cookie technology* outlined in the Background Section of this Specification."  '745 Patent at 25:55-58 (emphases added).  This explicit exclusion of cookie technology, in addition to the assertion that "interactive links" solve the problem with cookies, is a clear disavowal of claim scope.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1378 (Fed.

Cir. 2003) ("[T]he specification may limit the scope of a claim if the patentee has disavowed or disclaimed the scope by using words or 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'").

Droplets' manifest exclusion of cookies from the scope of the claimed invention compels a holding that an interactive link not be a cookie.  Moreover, Droplets does not argue that the meaning of the term "cookie" has changed and makes no argument that a cookie can ever be any type of "link."  Therefore, the construction of "interactive link" should exclude cookies.

III.   **CONCLUSION**

Defendants respectfully ask the Court to construe "interactive link" such that "an interactive link cannot be a bookmark, cookie, shortcut, hyperlink, or Internet address (URL)."

Dated:  November 25, 2013                     Respectfully Submitted,

                                    By:    /s/ Michael B. Levin

                                           Michael B. Levin
                                           mlevin@wsgr.com
                                           WILSON SONSINI GOODRICH &
                                           ROSATI
                                           Professional Corporation
                                           650 Page Mill Road
                                           Palo Alto, California 94304
                                           Telephone: 650.493.9300
                                           Facsimile: 650.493.6811

                                           Brian Range
                                           brange@wsgr.com
                                           WILSON SONSINI GOODRICH &
                                           ROSATI
                                           Professional Corporation
                                           900 South Capital of Texas Highway
                                           Las Cimas IV, Fifth Floor
                                           Austin, Texas 78746-5546
                                           Telephone: 512.338.5400
                                           Facsimile: 512.338.5499

                                           Larry L. Shatzer
                                           lshatzer@wsgr.com
                                           WILSON SONSINI GOODRICH &
                                           ROSATI
                                           Professional Corporation
                                           1700 K Street, NW, Fifth Floor
                                           Washington, DC 20006
                                           Telephone: 202.973.8800
                                           Facsimile: 202.973.8899

                                           Jessica Leigh Margolis
                                           jmargolis@wsgr.com
                                           WILSON SONSINI GOODRICH &
                                           ROSATI
                                           Professional Corporation
                                           1301 Avenue of the Americas, 40th Floor
                                           New York, NY 10019
                                           Telephone: 212.999.5800
                                           Facsimile: 212.999.5899

                                           **Counsel for Defendants,
                                           E*TRADE FINANCIAL
                                           CORPORATION, E*TRADE
                                           SECURITIES, LLC, E*TRADE BANK,
                                           TD AMERITRADE HOLDING
                                           CORPORATION, TD AMERITRADE,
                                           INC., SCOTTRADE, INC. AND**

**SCOTTRADE FINANCIAL SERVICES, INC., THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO., INC., CHARLES SCHWAB BANK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 25, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 5.2.

*/s/ Michael B. Levin*
Michael B. Levin