UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DROPLETS,

        Plaintiff,

   -against-                                  No. 12 Civ. 2326 (CM)

E*TRADE FINANCIAL CORPORATION, et al.,

        Defendants.

------------------------------------------------------------x

## SUPPLEMENTAL MARKMAN RULING

McMahon, J.:

    Following the court's Markman ruling on intrinsic evidence only, there remained one issue: whether to add the sentence, *"An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)"* to the definition of the term "interactive link." The parties have made submissions on the subject, with each side relying on the testimony of an esteemed expert.

    To reset the stage: The '745 patent issued on February 3, 2004. Droplets advised the Patent Office – apparently during the reexamination of the patent in 2009 – that URLs and Internet shortcuts "cannot perform the functions of interactive links as claimed," and that manual URL address inputs, bookmarks or special browser icons were not "an interactive link as claimed." (the "disclaimer").

    Droplets acknowledged, in connection with certain prior art references (Gish, Dickman, LeMole and ICE-T), that simple URLs and bookmarks and icons existed at the time the patent was originally prosecuted, but that those URLs, bookmarks and icons did not include "facilities for restoring previous operating states of the application as the application is re-presented at a user's computer." (Ex. KK at 27-28, 34, 55-56). Droplets thus argued that its disclaimer was limited to URLs, bookmarks or special browser icons as they existed at the time the patent originally issued – in other words, that all it disclaimed were prior art that points to the location of a web page or resource, such as the simple bookmarks, shortcuts, hyperlinks and URLs that it differentiated in the prosecution history. Since such things were incapable of restoring previous operating states of an application as re-presented at a user's computer, they were not encompassed within the prior art – or within Droplets' disclaimed relating thereto.

Indeed, Droplets argues – supported by the testimony of Dr. David Martin, its expert -- that the definitions of terms like URL, bookmark and hyperlink have changed over time, as the functionalities of those features has evolved.

Defendants, with support from their expert, Dr. Michael Shamos, argue that the definitions of URL, bookmark, hyperlink, and the like have not changed over time. Furthermore, in a supplemental submission, Defendants urge that URLs and other similar technologies were capable of performing the functions assigned by Droplets in 1999.

Each side, predictably, argues that the other has exceeded the scope of permitted extrinsic evidence and argument (in fact, neither side has done so) and that each side is lying or misrepresenting the state of play respecting these technologies in 1999.

I think that I may have gummed up the works unintentionally by thinking about this issue (and asking the parties to discuss the issue) in terms of the *definitions* of these words. It seems to me that it correctly characterizes developments in computer and software technology to say that the *definitions* of terms like URL, bookmark and hyperlink have not changed, but their *functionalities*, the number and types of things they can do, may have multiplied, so that one skilled in the art in 1999, when the patent issued, would not have understood URLs, bookmarks and hyperlinks or shortcuts to be capable of doing what they now can do. It is not a *definitional* issue so much as a *capability* issue.

The parties' submissions do not resolve the issue for me. While I am sure that the relevant technologies have evolved in the last decade and a half, and can perform functions of which they were incapable at the turn of the century, there is a serious dispute between the plaintiff and defendants about what functions a person skilled in the art would have thought these technologies could perform in 1999. Therefore, we will hold a hearing on January 8-9, 2014 -- starting at 2 PM on January 8 – at which time the parties' experts will testify (I hope briefly on direct, since I will have read much of their testimony already) and be cross examined, and the parties will argue the issues of (1) what the "disclaimed" technologies were or were not capable of in 1999, when the patent issued, and (2) the law relevant to scope of disclaimer. I will expect the parties to submit proposed findings of fact and conclusions of law at the beginning of the hearing; I hope to rule immediately after its close.

Dated: November 27, 2013

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL